# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| SYDNEY WARNER, on behalf of herself and all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 6:21-cv-02029-CJW-MAR ) ) |
| v. | ) ) |
| WARTBURG COLLEGE, | ) DEFENDANT'S BRIEF IN SUPPORT ) OF ITS MOTION TO DISMISS ) ) |
| Defendant. | ) |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................1

RELEVANT FACTUAL ALLEGATIONS .................................................................................2

STANDARD OF REVIEW ..........................................................................................................4

ARGUMENT .................................................................................................................................5

I.     Plaintiff's Claims Are Non-Justiciable Educational Malpractice Claims and Must Be Dismissed. ...........................................................................................................................5

II.    Plaintiff Fails to State a Claim for Breach of Contract........................................................8

      A.     Plaintiff's claim fails because she cannot identify a contractual obligation to provide in-person, on-campus instruction or services. ............................................8

      B.     Plaintiff's claim fails because Wartburg reserved its right to modify its courses and programs of study. ......................................................................................12

III.   Plaintiff Fails to State a Claim for Unjust Enrichment.....................................................14

CONCLUSION............................................................................................................................17

Defendant Wartburg College (collectively "Wartburg" or the "College"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiff's Class Action Complaint with prejudice and submits this Memorandum of Law in support.

## PRELIMINARY STATEMENT

In the Spring of 2020, every business, organization, and institution was forced to make immediate and unprecedented changes to protect against the novel and highly contagious COVID-19. Wartburg College was no exception. On March 16, 2020, following the World Health Organization's declaration of a global pandemic, and with the number of cases and fatalities across the state continuing to rise, the College made the difficult but necessary decision to transition to online learning beginning on March 18, 2020. Complaint ("Compl.") ¶ 7.

Though the format was undoubtedly different, the students' semester continued. Students attended virtual classes, pursued their courses of study, learned from Wartburg faculty, completed assignments, received credits, and even graduated. Because of online learning, students were able to receive the academic instruction and advancement they had been promised without risk to them or the health and safety of the Wartburg community.

Plaintiff nevertheless filed this putative class action suit, complaining that Wartburg's decision to transition to remote learning diminished the value of her education and entitles her and a putative class to a pro-rated refund of their tuition and fees. Compl. ¶ 2. While Plaintiff's frustrations with the realities of the pandemic are understandable, her claims are not legally cognizable.

First, Plaintiff's claims are, by her own admission, claims about the "subpar" quality of her education and are barred by long-standing precedent prohibiting claims for educational malpractice. Courts in Iowa and across the country have long declined to interfere in the internal

1

operations of academic institutions and subvert the judgement of educators and administrators. Plaintiff's Complaint asks the Court to do precisely that by asking it to pass judgement on the value and quality of her remote instruction as compared to her in-person courses. Though pled as a contract case, Plaintiff's claims are, at their core, impermissible claims about the quality of her academic experience and do not belong before the Court.

Even taking her claims at face value however, Plaintiff fails to state a claim for relief under any theory. First, Plaintiff cannot state a claim for breach of contract for the fundamental reason that she cannot identify any contractual promise to provide the in-person, on-campus instruction and services to which she claims to be entitled. Without establishing a contractual right to in-person instruction, Plaintiff's breach of contract claim necessarily fails.

Plaintiff's alternative theory of unjust enrichment fares no better. Plaintiff cannot state a claim for unjust enrichment first, because unjust enrichment is an equitable remedy and cannot apply where a contract governs the parties' relationship, and second because Plaintiff cannot establish that Wartburg was unjustly enriched by the transition to remote learning.

Because Plaintiff's claims are fundamentally without merit they cannot survive a motion to dismiss even if repled. For this reason, and as detailed below, Wartburg respectfully asks the Court to dismiss the Complaint in its entirety with prejudice.

## **RELEVANT FACTUAL ALLEGATIONS**[1]

Wartburg College is a private college located in Waverly, Iowa with a total enrollment of more than 1,500 students. Compl. ¶ 14. Plaintiff, Sydney Warner, was an undergraduate student at Wartburg during the spring of 2020 and paid approximately $21,750 in tuition and fees for the

---

[1] As it must, Wartburg accepts Plaintiff's allegations as true for the purposes of this Motion.

semester.[2] *Id.* ¶ 23.

Approximately two months into the Spring 2020 semester, COVID-19 began to spread rapidly across the United States. On March 11, the World Health Organization declared COVID-19 a global pandemic and on March 15, Governor Reynolds recommended immediate school closure.[3,4] Wartburg did so the following day, announcing that in-person classes would be conducted remotely beginning on March 18. Compl. ¶ 29. Consistent with guidance from the Centers for Disease Control (CDC) and federal and state authorities, Wartburg continued to conduct classes online for the remainder of the semester. *Id.*

Plaintiff alleges that in closing campus and transitioning to online instruction, Wartburg failed to provide the in-person, on-campus instruction and services she and her fellow students had been promised. Compl. ¶ 9. She claims that online learning was "subpar in practically every aspect" and classes were a "shadow of what they once were" and "in no way equivalent" to in-person courses. *Id*. ¶ 34. Remote instruction, she alleges, deprived her and others of "collaborative learning and in-person dialogue, feedback, and critique," as well as access to on-campus facilities and resources. *Id*. ¶¶ 27, 35. Plaintiff complains that she and the Class "did not choose to attend an online institution of higher learning" and are "therefore entitled to a

---

[2] Plaintiff refers to the "Spring 2020" semester throughout her Complaint. In fact, Wartburg operates on a 4-4-1 calendar. Fall Term courses begin in September and conclude before Christmas, Winter Term courses start in January and finish in mid-April and a four-week May Term completes the year. *See* Wartburg Course Catalogue Introduction, *available at* http://catalog.wartburg.edu/content.php?catoid=10&navoid=560 (last accessed May 13, 2021). To avoid confusion, Wartburg will adopt Plaintiff's misnomer for purposes of this Motion.

[3] *See* WHO Director-General's COVID-19 Remarks (March 11, 2020), *available at* https://tinyurl.com/vyvm6ob (last accessed on May 13, 2021).

[4] *See* Gov. Reynolds Recommends Iowa Schools Close for Four Weeks, Iowa Department of Public Health dated March 15, 2020, available at: https://idph.iowa.gov/News/ArtMID/646/ArticleID/158307/Gov-Reynolds-recommends-Iowa-schools-close-for-four-weeks-will-hold-a-press-conference-tomorrow-31520 (last accessed on May 13, 2021).

3

refund of all tuition and fees for services, facilities, access and/or opportunities that Defendant has not provided." *Id.* ¶¶ 30-31.

Plaintiff brings this lawsuit on behalf of herself and "all persons enrolled at [Wartburg] for the Spring 2020 term or any subsequent term who paid [Wartburg], in whole or in part, tuition, fees, and/or room and board."[5] Compl. ¶ 39.

## STANDARD OF REVIEW

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must "contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). "[W]hat is ordinarily required is pleading of allegations sufficient to raise a plausible inference as to each element of a claim or cause of action." *Catipovic v. Turley*, No. C 11-3074-MWB, 2012 U.S. Dist. LEXIS 79824, at *64 (N.D. Iowa June 8, 2012). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (internal citations omitted). Conclusions of fact and law "are … not entitled to the assumption of truth" and may be disregarded. *Id.* at 679.

---

[5] As defined in the Complaint, Plaintiff's putative class is plainly improper and would include any Wartburg student for any semester since the Spring 2020 semester, regardless of whether classes were conducted remotely. Further, the Complaint includes no allegations whatsoever regarding the method of instruction or access to campus for any semesters after the Spring 2020. To the extent Plaintiff seeks damages for subsequent semesters her claim insufficiently plead and entirely unsupported. Furthermore, students enrolling in subsequent semesters are not similarly situated as they enrolled with knowledge of the pandemic and presumably with notice of the College's plans with respect online and in-person instruction.

4

**ARGUMENT**

### I. Plaintiff's Claims Are Non-Justiciable Educational Malpractice Claims and Must Be Dismissed.

Plaintiff's claims must be dismissed first and foremost because they amount to allegations of educational malpractice and are not cognizable under Iowa law. Iowa, like nearly every state, has refused to recognize claims of educational malpractice, which includes "complaints about the reasonableness of the conduct engaged in by educational institutions in providing their basic functions of teaching, supervising, placing, and testing . . . ." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 121 (Iowa 2001); *Moore v. Vanderloo*, 386 N.W.2d 108, 115 (Iowa 1986). As the Iowa Supreme Court explained, permitting such claims "would force the courts blatantly to interfere with the internal operations and daily workings of an educational institution" — something courts are ill-equipped and have long been loath to do. *Moore*, 386 N.W.2d at 115. "This concern," the Supreme Court noted, "is particularly appropriate in the area of higher education." *Id*. (internal citation omitted); *see also Ross v. Creighton Univ.*, 957 F.2d 410, 415 (7th Cir. 1992) (finding interference in a school's internal operations "particularly troubling in the university setting where it necessarily implicates considerations of academic freedom and autonomy"). "Universities must be allowed the flexibility to manage themselves." *Soueidan v. St. Louis Univ.*, 926 F.3d 1029, 1034 (8th Cir. 2019) *citing Lucero v. Curators of Univ. of Mo.*, 400 S.W.3d 1, 8 (Mo. App. 2013).

As such, courts will not permit claims, regardless of how they are packaged or pled, that require "second-guessing the professional judgment of the University faculty on academic matters." *Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009); *Soueidan*, 926 F.3d at 1036 (affirming dismissal of plaintiff's claims and finding that if the court "waded into the issue of how closely [SLU] operated within the constructs of the . . . aspirational [Handbook

5

and Catalog] provisions cited by [Soueidan], [it] would be forced to engage—with complete disregard for Missouri law—in an educational malpractice analysis rife with . . . practical and policy concerns"); *Ross,* 957 F.2d at 414 (7th Cir. 1992) (noting that "the overwhelming majority of states that have considered [educational malpractice] claims have rejected [them]" and remarking on the "great weight of authority …bar[ring] any attempt to repackage an educational malpractice claim as a contract claim"); *Jackson v. Drake University*, 778 F. Supp. 1490, 1495 (S.D. Iowa 1991) (granting summary judgment to the defendant university where plaintiff's negligence claim invoked the same policy concerns as educational malpractice claims and "would force the court[] blatantly to interfere with the internal operations and daily workings of [the University]").

Simply put, a "breach-of-contract claim that raises questions concerning the reasonableness of the educator's conduct in providing educational services . . . is one of educational malpractice" and cannot stand. *Gillis v. Principia Corp.*, 832 F.3d 865, 872 (8th Cir. 2016) (affirming dismissal) (internal citations omitted). Whether a claim "sound[s] in contract or tort," courts "across the country have repeatedly rejected claims that seek damages for an allegedly 'subpar' education, or 'educational malpractice' claims." *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 U.S. Dist. LEXIS 235399, at *16 (C.D. Cal. Dec. 11, 2020.) That is precisely what Plaintiff alleges here. Though framed as a contractual dispute, Plaintiff's allegations are predicated on a complaint about the method of instruction and the College's decision to transition to remote learning. Plaintiff claims that her remote education was "subpar in practically every aspect" and deprived her of "collaborative learning and in-person dialogue, feedback, and critique." Compl. ¶¶ 27, 35. "[T]he value of the remote learning experience," she claims, "is less than the value of the on-campus experience." *Id*. at 2. To

6

evaluate and adjudicate these claims requires an analysis of the "value" of the students' remote educational experience as compared to their experience on-campus, and an evaluation of the reasonableness of the College's decision to prioritize health and safety over in-person gathering. This analysis invites the very interference into the College's operations that is the hallmark of an impermissible educational malpractice claim.

Indeed, several courts have dismissed nearly identical claims on this basis. For instance, in *Lindner*, a student at Occidental College made virtually verbatim claims that her remote instruction during the Covid-19 pandemic "was not worth the amount charged," was not "in any way the equivalent of in-person education," was "sub-par," and that online classes lacked "collaborative learning and . . . dialogue, feedback, and critique." *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 U.S. Dist. LEXIS 235399, at *18 (C.D. Cal. Dec. 11, 2020) (internal quotations omitted). The court found that the resolution of the student's claims would require it "to make judgments about the quality and value of the education that Occidental provided" and were the "type of educational malpractice claims that California courts, and courts throughout the country, have rejected." *Id.* at *19. A U.S. District Court for the Northern District of Illinois reached the same conclusion, finding that plaintiffs' claims that their online education during the COVID-19 pandemic was "worth significantly less than the value of live classes" are the "type of educational malpractice claims that Illinois courts, and courts throughout the country, have rejected." *Gociman v. Loyola Univ. of Chi.*, No. 20 C 3116, 2021 U.S. Dist. LEXIS 13238, at *7 (N.D. Ill. Jan. 25, 2021).

The same outcome is warranted here. Whether the Plaintiff's remote instruction was "subpar" or of lesser "value" is simply not for a court to decide. Consistent with *Lindner*, *Gociman,* and longstanding precedent barring educational malpractice claims, the Court should

7

not attempt to independently evaluate the quality of Plaintiff's education or second guess the College's judgment, and should dismiss Plaintiff's claims for what they are—nonactionable claims of educational malpractice.

## II. **Plaintiff Fails to State a Claim for Breach of Contract.**

To prevail on a breach of contract claim under Iowa law, a plaintiff must prove: 1) the existence of a contract; 2) the terms and conditions of the contract; 3) that the plaintiff has performed all the terms and conditions required under the contract; 4) the defendant's breach of the contract in some particular way; and 5) that the plaintiff has suffered damages as a result of the breach. *Molo Oil Co. v River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998). "The absence of any contract language supporting the alleged terms of the contract[] . . . and the impossibility of breaching non-existent terms . . . stand as 'insuperable bar[s] to relief' [and] warrant dismissal." *Williams v. Sec. Nat'l Bank of Sioux City*, 293 F. Supp. 2d 958, 970-71 (N.D. Iowa 2003). Here, Plaintiff's contract claim should be dismissed for her failure to identify an enforceable promise entitling her to in-person, on-campus instruction and her failure to allege a breach.

### A. *Plaintiff's claim fails because she cannot identify a contractual obligation to provide in-person, on-campus instruction or services.*

It is well established that "the basic legal relationship between a student and private university or College is contractual in nature." *Bissessur*, 581 F.3d at 601; *see also Lindner*, 2020 U.S. Dist. LEXIS 235399, at *20. The catalogs, bulletins, circulars, and regulations, of the institution made available to the matriculant may became part of the contract. *Bissessur*, 581 F.3d at 601-02. However, "[c]ontracts between a university and a student have been construed narrowly." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 944 (S.D. Iowa 2018). "General statements . . . do not give . . . rise to contractual liability." *Petro v. Palmer Coll. of*

8

*Chiropractic*, 945 N.W.2d 763, 780 (Iowa 2020). Likewise, aspirational statements and statements that do not "affirmatively set forth any obligation on behalf [the college]" similarly will not sustain a claim. *See Soueidan*, 926 F.3d at 1035 (affirming dismissal of plaintiff's breach of contract claim).

Indeed, many courts have held that to state a cognizable breach of contract claim against a college or university requires "an identifiable contractual promise that [the college] failed to honor." *See, e.g.*, *Gillis*, 832 F.3d at 871-72; *Ross,* 957 F.2d at 416; *Doe v. Loyola Univ.*, No. 18-6880, 2020 U.S. Dist. LEXIS 36129, at *23 (E.D. La. Mar. 3, 2020); *Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2021 U.S. Dist. LEXIS 67157, at *15 (N.D. Ill. Apr. 6, 2021). It is insufficient "for a student to merely state that . . . an implied contract existed." *Ross*, 957 F.2d at 603. "[T]he student's complaint must be specific about the source of this implied contract, the exact promises the university made to the student, and the promises the student made in return." *Charleston v. Bd. of Trs. of the Univ. of Ill. at Chi.*, 741 F.3d 769, 773 (7th Cir. 2013); *Marmarchi v. Bd. of Trs. of the Univ. of Ill.*, 715 F. App'x 529, 533 (7th Cir. 2017) (affirming dismissal where plaintiff had "not alleged any contract terms that the University violated, thus dooming this claim").

Here, Plaintiff's claim fails for the simple reason that she cannot establish a contractual right to in-person instruction. Plaintiff alleges that she "entered into a contractual agreement with Wartburg College to pay tuition and fees for the Spring semester of 2020 in exchange for, *inter alia*, access to campus facilities and activities, and in-person instruction in a physical classroom," and claims that the terms of the agreement were set forth in the Academic Catalog. Compl. ¶ 3, 5. The Academic Catalog, she claims, "contains numerous promises . . . relating to in-person instruction and activities." *Id*. ¶¶ 5, 24. Plaintiff alleges no facts to support these

9

allegations and does not (and cannot) point to *any* promise to provide instruction or services exclusively in-person or on campus.

The only example of the supposed "numerous" alleged promises of in-person instruction that Plaintiff is able to muster is a course description for "MU 281 Field Experience in Secondary Choral/Instrumental Music, Grades 5-12" which describes a "fifteen-hour field experience in a 5-12 choral, band, orchestra course, setting in public/parochial schools." Compl. ¶ 25. This "example" only underscores the baselessness of Plaintiff's claim. The quoted course description is simply not a contractual promise to provide in-person instruction. Indeed, it says nothing about campus facilities or education in a physical classroom. To the contrary, it implies that students enrolled in MU 281 would earn academic credit someplace *other than* a classroom on Wartburg's Beverly campus. At most, MU 281 is an example of a course that anticipated an off-campus component. It is not a promise of in-person, on-campus instruction even for MU 281 students, let alone for Wartburg's entire student population.[6]

Plaintiff also fails to allege any contractual promise regarding fees or on-campus services. Once again, she states, without evidence, that her tuition and fees were intended to cover "in person education, experience and services," but fails to allege *any facts* regarding what those "in person … experiences and services" were or where and when she was promised them.[7]

---

[6] Even if the course description referenced on-campus learning or in-person instruction, several courts have found that a location listed in a course catalog does not amount to a contractual obligation to provide instruction in that location. *See, e.g.*, *Oyoque v. DePaul Univ.*, No. 20 C 3431, 2021 U.S. Dist. LEXIS 31722, at *9 (N.D. Ill. Feb. 21, 2021) (rejecting Plaintiff's argument that a course described in the course catalog as a "lecture-laboratory" amounted to a promise to provide in-person instruction); *Crawford v. Presidents & Dirs. of Georgetown Coll.*, No. 20-cv-1539 (CRC), 2021 U.S. Dist. LEXIS 87593, at *18 (D.D.C. May 7, 2021) (references to on-campus instruction in universities' written materials that do not include promissory language did not amount to a contractual promise).

[7] In the event Plaintiff is attempting to rely on Wartburg's marketing materials, "promotional materials are not among the terms of the contract between universities and their

10

Case 6:21-cv-02029-CJW-MAR    Document 11-1    Filed 05/26/21    Page 12 of 20

Instead, Plaintiff asks the Court to simply assume that Wartburg's decision to close campus must have amounted to a breach of contract. Her unfounded assumption and conclusory allegations cannot support a legal claim.[8] *See Iqbal*, 556 U.S. at 681 (conclusory allegations are not entitled to assumption of truth); *see also, Chong v. Ne. Univ.*, 2020 U.S. Dist. LEXIS 181622, at *10-12 (D. Mass. Oct. 1, 2020) (rejecting plaintiff's attempt to infer a breach of contract based solely on campus closure and assessing claims regarding fees by analyzing "the payment terms and description of the services received for each fee" to assess whether the fees were intended to "gain access to any on-campus facility or resource").

Ultimately, a breach of contract claim requires a contractual obligation. While Plaintiff undoubtedly hoped to complete her 2020 spring semester in-person, she does not, and cannot, point to any contractual promise to that effect. As courts across the country have repeatedly explained in dismissing analogous claims, where "none of the materials identified by plaintiffs demonstrate a promise to provide in-person instruction and in-person services," a breach of

---

students." *Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 U.S. Dist. LEXIS 17218, at *17 (N.D. Ill. Feb. 4, 2019) (rejecting Plaintiff's breach of contract claim based on statements made in the school's marketing materials). "As alluring as [marking materials] might be, they aren't concrete promises" and cannot sustain a student's claim for a breach of contract. *Oyoque*, 2021 U.S. Dist. LEXIS 31722, at *12-13 (rejecting plaintiff's argument that DePaul's marketing material amounts to a contractual obligation to provide in-person education); *see also Marbury v. Pace Univ.* (*In re Columbia Tuition Refund Action*), No. 20-CV-3208 (JMF), 2021 U.S. Dist. LEXIS 36659, at *12-14 (S.D.N.Y. Feb. 26, 2021) (references in Columbia's marketing materials to 'the on-campus experience'" did not establish a contractual right to "live, in-person instruction in a physical classroom"); *Shaffer v. George Wash. Univ.*, No. 20-1145 (RJL), 2021 U.S. Dist. LEXIS 56005, at *7 (D.D.C. Mar. 21, 2021) ("materials touting the vitality of the campus experience certainly create an expectancy of on-campus education, but do not definitively promise such").

[8] To the extent Plaintiff suggests in-person instruction and services were impliedly promised because Wartburg's tuition and fees were "higher than tuition and fees for ***other online institutions***," her argument is nonsensical. (Compl. ¶ 37) (emphasis added). That online courses at ***other online institutions*** cost less than Wartburg says nothing about Wartburg's contractual obligation to its students.

11

Case 6:21-cv-02029-CJW-MAR   Document 11-1   Filed 05/26/21   Page 13 of 20

contract claim will not survive. *Gociman*, 2021 U.S. Dist. LEXIS 13238, at *7.[9] Here, Plaintiff's reference to a single course description for a course that takes place off campus quite clearly does not establish a contractual right to exclusive in-person, on-campus instruction and services and her claim necessarily fails as a result.

   B. *Plaintiff's claim fails because Wartburg reserved its right to modify its courses and programs of study.*

Plaintiff's breach of contract claim also fails because even if she were entitled to exclusive in-person instruction (which she has plainly failed to establish), the College explicitly reserved its right to modify its courses and academic programs. Here, the Academic Catalog specifically states that "Wartburg College reserves the right, without notice . . . to modify the courses of instruction or programs of study . . . or to alter any portion of [the] catalog."[10] Where

---

[9] *See e.g., Buschauer*, 2021 U.S. Dist. LEXIS 67157, at *18 (N.D. Ill. Apr. 6, 2021); *Oyoque*, 2021 U.S. Dist. LEXIS 31722, at *8-13 (N.D. Ill. Feb. 21, 2021); *Hernandez v. Ill. Inst. of Tech.*, No. 20-cv-3010, 2021 U.S. Dist. LEXIS 78943, at *15 (N.D. Ill. Apr. 23, 2021)*; Miller v. Lewis Univ.*, No. 20 C 5473, 2021 U.S. Dist. LEXIS 69744, at *16 (N.D. Ill. Apr. 11, 2021); *Zagoria v. N.Y. Univ.*, 2021 U.S. Dist. LEXIS 50329, at *9 (S.D.N.Y. Mar. 17, 2021); *Shaffer v. George Wash. Univ.*, No. 20-1145 (RJL), 2021 U.S. Dist. LEXIS 56005, at *8 (D.D.C. Mar. 21, 2021); *Abuelhawa v. Santa Clara Univ.*, No. 20-CV-04045-LHK, 2021 U.S. Dist. LEXIS 61263, at *15 (N.D. Cal. Mar. 29, 2021); *Hassan v. Fordham Univ.*, No. 20-CV-3265 (KMW), 2021 U.S. Dist. LEXIS 16541, at *19 (S.D.N.Y. Jan. 28, 2021); *Burt v. Bd. of Trs. of the Univ. of R.I.*, No. 20-465-JJM-LDA, 2021 U.S. Dist. LEXIS 42059, at *30 (D.R.I. Mar. 4, 2021); *Lindner*, 2020 U.S. Dist. LEXIS 235399, at *19 (C.D. Cal. Dec. 11, 2020); *Crawford v. Presidents & Dirs. of Georgetown Coll.*, No. 20-cv-1539 (CRC), 2021 U.S. Dist. LEXIS 87593, at *27 (D.D.C. May 7, 2021).

[10] 2019-2020 Wartburg College Academic Catalog, *available at*: http://catalog.wartburg.edu/index.php?catoid=10 (last accessed May 16, 2021). Because the Plaintiff's breach of contract claim is based on the Academic Catalog (s*ee* Compl. ¶¶ 5, 6, 24-28, 47, 48, 51), the Court may consider the catalog in analyzing the sufficiency of the allegations without converting Defendant's Motion to Dismiss to a Motion for Summary Judgment. *See Dean Snyder Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 173 F. Supp. 3d 837, 841 (S.D. Iowa 2016) (("Where, as here, the claims relate to a written contract that is part of the record in the case, [the Court] consider[s] the language of the contract when reviewing the sufficiency of the complaint" (citing *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010)); *Whiskey River on Vintage v. Ill. Cas. Co.*, No. 4:20-cv-185-JAJ, 2020 U.S. Dist. LEXIS 233826, at *3 (S.D. Iowa Nov. 30, 2020) (allowing consideration of a policy and the

a college "explicitly reserved the right to unilaterally alter the administration of [its] academic offerings," the Court "cannot possibly read an obligation for in-person education, let alone during a global pandemic, into the [college's] contracts with students." *Burt v. Bd. of Trs. of the Univ. of R.I.*, No. 20-465-JJM-LDA, 2021 U.S. Dist. LEXIS 42059, at *17 (D.R.I. Mar. 4, 2021).

Indeed, numerous courts addressing remote learning during the COVID-19 pandemic have dismissed breach of contract claims where schools have similarly reserved the right to make changes to their academic offerings. *See, e.g.*, *Dougherty v. Drew University*, No. 21-00249 (KM) (ESK), 2021 U.S. Dist. LEXIS 73138, at *18-20 (D.N.J. Apr. 14, 2021) (university's reservation of rights to "make changes of any nature in the University's academic program" including the "the modification of [course] content" authorized the University's response to the pandemic); *see Crawford v. Presidents & Dirs. of Georgetown Coll.*, No. 20-cv-1539 (CRC), 2021 U.S. Dist. LEXIS 87593, at *22 (D.D.C. May 7, 2021) (dismissing breach of contract claims where the universities' broadly worded reservations of rights to amend course and catalogs "put students on notice that their expectations regarding the format of instruction—even *reasonable* expectations—might go unfulfilled"); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 U.S. Dist. LEXIS 235399, at *23 n.2 (C.D. Cal. Dec. 11, 2020) (rejecting plaintiffs' breach of contract argument where Occidental reserved its right under the 2019-2020 Catalog to "'change without notice' the '[f]ees, tuition, programs, courses, course content, instructors, and regulations'"); *Buschauer v. Columbia Coll. Chi.*, No. 20 C 3394, 2021

---

proclamation identified in the complaint and integral to plaintiffs' claims without converting defendant's motion for judgment on the pleadings into a motion for summary judgment).

13

U.S. Dist. LEXIS 67157, at *15 (N.D. Ill. Apr. 6, 2021) (rejecting Plaintiff's argument that the course catalog guaranteed in-person instruction "particularly given the course catalog's disclaimers and reservation of rights"); *Mitelberg v. Stevens Inst. of Tech.*, Civil Action No. 21-1043 (SDW) (MAH), 2021 U.S. Dist. LEXIS 98538, at *8 (D.N.J. May 25, 2021) ("Because Defendant expressly retained the right to alter requirements and procedures, its transition to virtual instruction during the 2020 Spring Semester falls within its purview under the [reservation of rights].").

As in all the cases above, Wartburg's decision to transition to online learning for a portion of the Spring 2020 semester was expressly permitted by the very contract Plaintiff cites in her Complaint. *See* Compl. ¶ 5. Because Wartburg explicitly reserved the right to modify "without notice" the "courses of instruction or programs of study," Plaintiff cannot plausibly allege that exercising that right amounted to a breach.

### III. Plaintiff Fails to State a Claim for Unjust Enrichment

Plaintiff also fails to allege a claim for unjust enrichment. To recover on a theory of unjust enrichment under Iowa law, a plaintiff must establish that "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *Hunting Sols., Ltd. Liab. Co. v. Knight*, 902 N.W.2d 592 (Iowa App. 2017).

Plaintiff's unjust enrichment claim fails for two reasons. First, Plaintiff cannot state a claim for unjust enrichment because "a breach of contract claim and an unjust enrichment claim cannot coexist with respect to the same subject matter." *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 807 (Iowa 2018). "[W]here . . . an express contract exists, that contract governs and Iowa courts will not imply a different contract to permit a claim for unjust enrichment."

14

*Dean Snyder Constr. Co. v. Travelers Prop. Cas. Co. of Am.*, 173 F. Supp. 3d 837, 854 (S.D. Iowa 2016). "One who pleads an express . . . contract cannot ordinarily recover under an implied contract or quantum meruit." *Giese Construction Co., Inc. v. Randa*, 524 N.W.2d 427, 431 (Iowa App. 1994).

Here, Plaintiff alleges repeatedly and unequivocally that she entered into a contractual agreement with Wartburg for educational services. *See* Compl. ¶¶ 2, 5, 6, 47. She explains when the contract was formed and that the terms of the contract are set forth in Wartburg's publications, including the Academic Catalog. *Id.* ¶¶ 5, 47-49. While the parties disagree about whether that agreement contained a promise to provide in-person education, the fact of a contractual agreement is not in dispute. As the Iowa Supreme Court explained, "[t]he existence of an express contract . . . prevents [Plaintiff] from circumventing [the parties'] agreement by seeking to use theories of unjust enrichment . . to recover for [damages] to which [s]he was plainly not entitled under the terms of the contract." *Kunde*, 920 N.W.2d at 808. In other words, Plaintiff may not pivot to a quasi-contract theory simply because her contractual agreement with the College does not include the promise of in-person instruction that she now wishes it did. Because Plaintiff's claims against the College are governed by an express contract, she cannot pursue a claim for equitable relief. *See Oyoque,* 2021 U.S. Dist. LEXIS 31722, at *14 ("[P]laintiffs allege there is a contract, and the defendant does not dispute this. For this reason, the Court dismisses [Plaintiff's unjust enrichment claim]"); *Gociman*, 2021 U.S. Dist. LEXIS 13238, at *14 (dismissing plaintiff's unjust enrichment claims based on "the inescapable conclusion that the present dispute arises out of an express contract"); *Zagoria v. N.Y. Univ.*, 2021 U.S. Dist. LEXIS 50329, at *13 (S.D.N.Y. Mar. 17, 2021) (dismissing unjust enrichment claim where "it is undisputed that the parties have a valid contract that governs the[ir]

15

relationship" and the plaintiff "offers no explanation as to how his unjust enrichment claims differs from his contract claim").

Plaintiff's claim further fails because she has not established that Wartburg was unjustly enriched or enjoyed any undeserved benefit as a result of its transition to remote learning. The doctrine of unjust enrichment is based on the "principle that a party should not be permitted to be unjustly enriched at the expense of another or receive property or benefits without paying just compensation." *W. Branch State Bank v. Gates*, 477 N.W.2d 848, 851-52 (Iowa 1991). An unjust enrichment claim is based on a "underlying sense of justice" and appropriate where "a situation has arisen making it inequitable or unjust not to order restitution." *Iowa Waste Sys. v. Buchanan Cty.*, 617 N.W.2d 23, 31 (Iowa App. 2000). That is not the case here. As Plaintiff acknowledges, Wartburg continued to provide academic instruction throughout the Spring semester and in the face of unprecedented challenges. Plaintiff has not alleged any facts to suggest that Wartburg benefited from the pandemic or its decision to move to remote learning. To the contrary, Wartburg continued to incur significant operational costs in addition to the enormous technology and infrastructure costs associated with rapidly transitioning to online instruction. Plaintiff's bare assertion that Wartburg was unjustly enriched is unsupported and not plausibly pled. Nor has Plaintiff alleged that equity and good conscience require repayment of students' tuition and fees. Wartburg, like every college and university, adapted out of necessity and at significant expense. Plaintiff does not challenge Wartburg's decision to transition to remote learning and does not allege any facts to suggest that it acted in bad faith. *See* Compl. ¶ 2. Under these circumstances, equity does not warrant a refund.

# CONCLUSION

For all the reasons discussed above, Plaintiff cannot state a claim upon which relief can be granted. Because no amendment or additional facts can salvage Plaintiff's claims, the Court should dismiss the Complaint with prejudice in its entirety.

Dated: May 26, 2021                                Respectfully submitted,

                                                   By:   **WARTBURG COLLEGE**

*/s/ Mark L. Zaiger*
MARK L. ZAIGER                   AT0008655
SHUTTLEWORTH & INGERSOLL, P.L.C.
115 Third Street SE, P.O. Box 2107
Cedar Rapids, IA 52406-2107
PHONE:      (319) 365-9461
FAX:        (319) 365-8443
EMAIL:              mlz@shuttleworthlaw.com

and

*/s/ Monica H. Khetarpal (*admitted *pro hac vice)*
Monica H. Khetapal (*pro hac vice*)
Julia S. Wolf (*pro hac vice*)
Jackson Lewis P.C.
150 North Michigan Avenue, Suite 2500
Chicago, Illlinois  60601
Tel.: 312.787.4949
Monica.Khetarpal@jacksonlewis.com
Julia.Wolf@jacksonlewis.com

Eric Magnus (*pro hac vice*)
171 17th Stree NW
Suite 1200
Atlanta, GA  30363
(404) 525-8200
Eric.Magnus@jacksonlewis.com

ATTORNEYS FOR DEFENDANT
WARTBURG COLLEGE

17

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 26, 2021, I filed the foregoing document electronically through the CM/ECF system, which will send notice to Defendants and all counsel of record.

DATED this 26th day of May, 2021.

*/s/ Heather Bertch*