**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

| | |
|---|---|
| SYDNEY WARNER, *on behalf of herself and all others similarly situated*,<br><br>           Plaintiff,<br><br>vs.<br><br>WARTBURG COLLEGE,<br><br>           Defendant. | No. 21-CV-2029-CJW-MAR<br><br>**ORDER** |

---

**TABLE OF CONTENTS**

I. INTRODUCTION ………………………………………………………………2

II. RELEVANT BACKGROUND ………………………………………………2

III. APPLICABLE LAW ……………………………………………………………3

IV. ANALYSIS…………………………………………………………………………5

    A. Breach of Contract ……………………………………………………5

        1. Educational Malpractice …………………………………5

        2. Lack of Contractual Obligation……………………………10

        3. Right to Modify Courses and Programs …………………17

    B. Unjust Enrichment ……………………………………………………19

V. LEAVE TO AMEND ……………………………………………………………20

VI. CONCLUSION……………………………………………………………………21

## I.    INTRODUCTION

This matter is before the Court on defendant Wartburg College's ("defendant" or "Wartburg") motion to dismiss plaintiff Sydney Warner's ("plaintiff") petition under Federal Rule of Civil Procedure 12(b)(6).  (Doc. 11).  Plaintiff timely filed a resistance.  (Doc. 17).  Defendant timely filed a reply.  (Doc. 27).  For the following reasons, the Court **grants in part and denies in part** defendant's motion.

## II.    RELEVANT BACKGROUND

At the motion to dismiss stage, the Court accepts the following facts stated in plaintiff's petition as true.  (Doc. 2).  Defendant is a private college in Waverly, Iowa.  (*Id.*, at 2, 4).  Plaintiff is a resident of Iowa and, during the relevant time period, was a full-time undergraduate student at Wartburg pursuing a music degree.  (*Id.*, at 4).  Plaintiff brings this class action on behalf of herself and "all people who paid tuition and fees for the Spring 2020 Semester at Wartburg[.]"  (*Id.*, at 1).  Plaintiff alleges that she and other students "lost the benefit of the education [and services] for which they paid" due to defendant's response to the COVID-19 pandemic (the "Pandemic").  (*Id.*).

Plaintiff "entered into a contractual agreement with Wartburg" to enroll in the Spring 2020 Semester.  (*Id.*).  "Approximate tuition costs at Wartburg . . . for the Spring 2020 Semester [we]re $21,750 for full-time undergraduate students."  (*Id.*, at 4).  Plaintiff alleges that defendant's Academic Catalog, website, and marketing materials comprise the terms of her contract with defendant.  (*Id.*, at 2, 7).  Plaintiff alleges that such terms entitled her, upon the payment of tuition and fees, to an on-campus college education, including "access to campus facilities and activities, and in-person instruction in a physical classroom."  (*Id.*, at 1).

In February 2020, the Spring 2020 Semester began at Wartburg.  (*Id.*, at 4).  On March 16, 2020, defendant announced that, because of the Pandemic, all in-person classes would be suspended effective March 18, 2020.  (*Id.*, at 6).  Thus, on March 18,

2020, all classes transitioned to an online, remote format for the remainder of the Spring 2020 Semester, which ended in May 2020. (*Id.*, at 4, 6). While online courses were taking place, defendant's campus was closed. (*Id.*, at 6). Despite the shift to online learning and closure of its facilities, defendant did not refund any portion of the tuition or fees paid by plaintiff and other students. (*Id.*, at 5).

On March 15, 2021, plaintiff filed her petition against defendant in the Iowa District Court for Bremer County. (*Id.*, at 1). On April 19, 2021, defendant removed the case to this Court under Title 28, United States Code, Section 1332(d). (Doc. 1). In her petition, plaintiff asserts a claim for breach of contract against defendant as well as an alternative claim for unjust enrichment. (*Id.*, at 13, 15).

### III.    APPLICABLE LAW

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought."

Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations, quotation marks, and alteration omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.* at 555–56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery

3

will reveal evidence of [the conduct alleged]." *Id.* at 556. In ruling on a Rule 12(b)(6) motion, the court must accept as true all the factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Simes v. Ark. Judicial Discipline & Disability Comm'n*, 734 F.3d 830, 834 (8th Cir. 2013) (citation omitted).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains no more than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

"Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading." *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012) (citation omitted). A contract forming the basis for a claim for relief is "evidently embraced by the pleadings." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003). Thus, "[i]n a case involving a contract, the court may examine the contract documents in deciding a motion to dismiss." *Stahl v. U.S. Dep't of Agric.*, 327 F.3d 697, 700 (8th Cir. 2003).

4

## IV.   ANALYSIS

The Court will first address plaintiff's breach of contract claim before turning to her alternative unjust enrichment claim.  As an initial matter, there is no dispute between the parties that plaintiff's claims arise under Iowa law.  *See* (Docs. 11-1, at 10, 16; 17, at 6, 17).  Thus, the Court will apply Iowa law.

### A.   Breach of Contract

In her breach of contract claim, plaintiff alleges that the Academic Catalog constituted an offer by defendant to plaintiff and other students to enter a contract.  (Doc. 2, at 13).  By paying tuition and fees and selecting courses for the Spring 2020 Semester offered in the Academic Catalog, plaintiff alleges that under the terms of that contract she and others "were entitled to in-person educational services [at Wartburg] through the end of the Spring 2020 Semester."  (*Id.*, at 13–14).  Plaintiff concludes that moving classes online and closing campus deprived her and other students of the in-person educational benefits they paid for.  (*Id.*).  Thus, plaintiff requests that defendant "return the pro-rated portion of any Spring 2020 Semester tuition and fees for education services not provided since Wartburg . . . shut down on March 18, 2020."  (*Id.*, at 14).

Defendant argues that plaintiff's breach of contract claim fails for three reasons.  First, it amounts to a non-justiciable educational malpractice claim.  (Doc. 11-1, at 7–10).  Second, plaintiff fails to identify any contractual language entitling her and other students to in-person, on-campus instruction and services.  (*Id.*, at 10–14).  Last, no breach occurred because defendant reserved the right to modify its courses and programs under the contract.  (*Id.*, at 14–16).  The Court will address each argument in turn.

### 1.   Educational Malpractice

Claims for educational malpractice attack the quality of the education offered by an educational institution, focusing on "the reasonableness of the conduct engaged in by [school officials] in providing their basic functions of teaching, supervising, placing, and

testing students in relationship to the level of academic performance and competency of the student." *Sain v. Cedar Rapids Cmty. Sch. Dist.*, 626 N.W.2d 115, 121 (Iowa 2001). Iowa courts have refused to recognize such a cause of action, as has nearly every other court to consider it. *Id.* Indeed, the Iowa Supreme Court has held that educational malpractice claims are improper because such claims lack "a satisfactory standard of care by which to measure an educator's conduct," present "inherent uncertainty in determining the cause and nature of any damages," and threaten a flood of litigation against schools. *Moore v. Vanderloo*, 386 N.W.2d 108, 114 (Iowa 1986). The court also emphasized that such claims "would force the courts blatantly to interfere with the internal operations and daily workings of an educational institution" which would be contrary to academic freedom and the autonomy of schools. *Id.* at 115.

Here, defendant asserts that plaintiff's breach of contract claim amounts to allegations of educational malpractice. (Doc. 11-1, at 7). Specifically, defendant argues that plaintiff's claim rests on an assertion that the remote education offered by defendant in the Spring 2020 Semester was worth less than an in-person education. (*Id.*, at 8–9). Indeed, plaintiff's petition repeatedly characterizes her remote learning as less valuable than in-person instruction, "subpar in practically every aspect," and "worth nowhere close to the amount charged" here. (Doc. 2, at 1, 3, 8). Defendant argues that whether remote instruction is less valuable is not a justiciable question. (Doc. 11-1, at 9–10) (citing *Gociman v. Loyola Univ. of Chi.*, No. 20 C 3116, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25, 2021) (dismissing a claim identical to plaintiff's claim here because it amounted to a claim of educational malpractice)); *Lindner v. Occidental Coll.*, No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *7 (C.D. Cal. Dec. 11, 2020) (same)).

Plaintiff counters that her breach of contract claim does not amount to allegations of educational malpractice. (Doc. 17, at 6). She alleges that she and other students were contractually entitled to in-person education during the Spring 2020 Semester because

they paid tuition and fees, and that defendant breached the contract by transitioning to remote learning in March 2020.  (*Id.*).  Plaintiff submits that her discussion of the lesser value of remote learning in her petition relates to damages and is not the basis of her breach of contract claim.  (*Id.*, at 9–10).

Most courts considering near-identical claims to plaintiff's claim here have found that the claim sounds in breach of contract, not educational malpractice.  *See, e.g.*, *Durbeck v. Suffolk Univ.*, No. 20-10985-WGY, 2021 WL 2582621, at *4 (D. Mass. June 23, 2021) ("[C]ourts across the country have rejected defendant-schools' educational malpractice arguments on motions to dismiss in nearly every COVID-19 tuition refund dispute."); *Botts v. John Hopkins Univ.*, No. ELH-20-1335, 2021 WL 1561520, at *8 (D. Md. Apr. 21, 2021) ("[A]t this juncture the educational malpractice doctrine does not bar plaintiff's claims."); *Metzner v. Quinnipiac Univ.*, No. 3:20-cv-00784 (KAD), 2021 WL 1146922, at *8 (D. Conn. Mar. 25, 2021) ("[T]he Court agrees with the majority of cases that have deemed the educational malpractice doctrine inapposite to the theory of liability alleged here."); *Patel v. Univ. of Vt. & State Ag. Coll.*, No. 5:20-cv-61, 2021 WL 1049980, at *5 (D. Vt. Mar. 15, 2021) (finding educational malpractice claims repackaged as breach of contract claims should be rejected, but concluding this claim was not merely repackaged); *Rhodes v. Embry-Riddle Aeronautical Univ., Inc.*, No. 6:20-cv-927-Orl-40EJK, 2021 WL 140708, at *4 (M.D. Fla. Jan. 14, 2021) ("[T]he essence of Plaintiff's claim is that he contracted for in-person classes and received online classes instead—a paradigmatic contract claim."); *McCarthy v. Loyola Marymount Univ.*, No. 2:20-cv-04668-SB (JEMx), 2021 WL 268242, at *3 n.2 (C.D. Cal. Jan. 8, 2021) ("The vast majority of federal courts . . . [have found] that similar claims do not implicate the educational malpractice doctrine."); *In re: Boston Univ. Covid-19 Refund Litig.*, No. 20-10827-RGS, 2021 WL 66443, at *2 n.5 (D. Mass. Jan. 7, 2021) (finding the plaintiff challenged "the fact of the switch from in-person to online instruction, not the *quality* of

7

the online education"); *Ford v. Rensselaer Polytechnic Inst.*, No. 1:20-CV-470, 2020 WL 7389155, at *6 (N.D.N.Y. Dec. 16, 2020) (holding the plaintiffs' claim was proper both in form and in substance); *Gibson v. Lynn Univ., Inc.*, No. 2-CIV-81173-RAR, 2020 WL 7024463, at *4 (S.D. Fla. Nov. 29, 2020) ("[T]his is not a case about the quality of the education [the defendant] provided students during the Spring 2020 semester."); *Saroya v. Univ. of the Pacific*, 503 F. Supp. 3d 986, 996 (N.D. Cal. 2020) (holding the claim required only a contractual analysis, not "judgments about pedagogical methods or the quality of the school's classes, instructors, curriculum, textbooks, or learning aids, nor . . . [the] individual students' educational progress or achievement") (citation and internal quotation marks omitted); *Salerno v. Fla. S. Coll.*, 488 F. Supp. 3d 1211, 1218 (M.D. Fla. 2020) ("This case is simply about an alleged promise to provide in-person learning that was allegedly breached" and "not about the quality of the College's education"); *Kishinevsky v. Board of Trs. of Metro. State Univ. of Denver*, No. 20CV31452, 2020 WL 7087313 (Colo. Dist. Ct. Nov. 23, 2020) ("Plaintiff's claims relate to specific provisions [of the contract], rather than the general quality of the educational experiences he received."); *Spiegel v. Trs. of Ind. Univ.*, No. 53C06-2005-CT-000771, 2020 WL 7135320, at *2 (Ind. Cir. Nov. 19, 2020) (finding the plaintiff's claim was not one for education malpractice after "making all inferences in [his] favor"); *Verlanga v. Univ. of San Francisco*, No. CGC-20-584829, 2020 WL 7229855, at *4 (Cal. Super. Nov. 12, 2020) (holding the inquiry at issue concerned not "the nuances of educational processes and theories, but rather [an] objective assessment of the University's performance of its promise"); *Smith v. Ohio State Univ.*, No. 2020-00321JD, 2020 WL 5694224, at *2 (Ohio Ct. Cl. Sept. 9, 2020) ("The mere mention of possible consequences to plaintiff[']s educational or professional future does not render [her] complaint a claim for educational malpractice."); *Cross v. Univ. of Toledo*, No. 2020-00274JD, 2020 WL 4726814, at *3 (Ohio Ct. Cl. Jul. 8, 2020) (finding it improper

to recast the plaintiff's claim as one for educational malpractice).

The Court finds these authorities persuasive and concludes that plaintiff's claim is not one for educational malpractice. Plaintiff is the master of her claims, although her authority is not unlimited. *See, e.g.*, *LaHue v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-00203-JEG, 2009 WL 10665976, at *2 (S.D. Iowa May 13, 2009). She has presented her claim as one for breach of contract, not educational malpractice. Her petition explains the manner in which her claim arises out of breach of contract; she alleges she contracted for in-person educational services and instead received online educational services during the Pandemic. In short, plaintiff has stated her claim under a permissible theory of liability. Also, determining liability will not require the Court to interfere in defendant's educational operations. Rather, liability on this claim will be determined by assessing whether there was a contract, whether that contract was breached, and whether damages resulted from that breach. Plaintiff's allegation that her remote education was subpar is relevant to that discussion of damages, but it is not the basis of her claim.

The Court declines to follow *Gociman v. Loyola University of Chicago* and *Lindner v. Occidental College*, the two cases defendant primarily relies upon, to the extent those decisions conflict with the Court's analysis above, and it is not clear that they do. In *Gociman*, the plaintiffs argued that their breach of contract claim did not concern the quality of the remote education they received but, rather, the defendant's failure "to perform the educational service 'at all.'" 2021 WL 243573, at *3. The court rejected that argument because the plaintiffs pled that they received a remote education, concluding that the claim sounded in educational malpractice. *Id.* Similar arguments and conclusions occurred in *Lindner*. 2020 WL 7350212, at *6–7 (arguing the defendant failed "to provide an educational service" by not offering "any classes or fail[ing] to deliver a promised number of hours," concluding the claim required evaluating the

9

quality of the remote education).  Here, in contrast, plaintiff does not merely allege that she did not receive educational services at all, but rather, that she contracted for in-person services and did not receive them.  That is a breach of contract claim, not an educational malpractice claim.

For these reasons, the Court rejects defendant's argument that plaintiff's claim is one of educational malpractice.

## 2. *Lack of Contractual Obligation*

Defendant argues plaintiff's breach of contract claim fails because "she cannot identify a contractual obligation to provide in-person, on-campus instruction or services." (Doc. 11-1, at 10).  Defendant submits that although the relationship between an educational institution and a student is contractual in nature, such contracts are narrowly construed.  (*Id.*, at 10–11).  Defendant argues the Academic Catalog contains no promises of in-person education or on-campus services and that marketing materials are not contractually relevant.  (*Id.*, at 12, 12–13 n.7).

Plaintiff argues that statements in the Academic Catalog and defendant's marketing materials clearly promise an in-person, on-campus education, even if there is not a "hyper-specific, unconditional promise" to that effect.  (Doc. 17, at 10–11).

Under Iowa law, a party must prove the following to succeed on a breach of contract claim:

> (1) the existence of a contract between the parties; (2) the terms and conditions of the contract; (3) that they performed all the terms and conditions required under the contract; (4) that [the opposing party] breached the contract in some particular way; and (5) that they suffered damages as a result of the breach.

*Kaydon Acquisition Corp. v. Custum Mfg., Inc.*, 317 F. Supp. 2d 896, 912 (N.D. Iowa 2004) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

10

The legal relationship between a student and a private university, college, or other educational institution "is contractual in nature." *Corso v. Creighton Univ.*, 731 F.2d 529, 531 (8th Cir. 1984) (citation omitted) (applying Nebraska law); *see also Jackson v. Drake Univ.*, 778 F. Supp. 1490, 1493 (S.D. Iowa 1991) ("The financial aid agreements entered into by [the defendant university] and [the plaintiff student] constitute valid contracts."). "Contracts between a university and a student have been construed narrowly." *Rossley v. Drake Univ.*, 342 F. Supp. 3d 904, 944 (S.D. Iowa 2018) (citing *Jackson*, 778 F. Supp. at 1493 (holding the contract did not contain an implicit agreement for the student to play basketball)). "[T]he issue of what documents constitute a contract [between a defendant educational institution and plaintiff student] is . . . properly one for the jury to decide." *Warren v. Drake Univ.*, 886 F.2d 200, 202 (8th Cir. 1989). Indeed, academic catalogues, codes of conduct, institutional regulations, student handbooks, and other documents may all be relevant in establishing the terms of the educational contract. *See Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009); *Rossley*, 778 F. Supp. 3d at 909 (discussing a student conduct code and misconduct policy).

On the issue of implied terms, the Iowa Supreme Court has been careful to distinguish "[r]eading an existing contractual provision as having an essential corollary" from "adding a new implied term to a contract." *Alta Vista Props., LLC v. Mauer Vision Ctr.*, 855 N.W.2d 722, 729 (Iowa 2014). The former is a permissible "interpretative exercise" because even "[a]n integrated contract can contain an implicit, unstated, but necessary term[.]" *Id.* (quoting *Acoustic Processing Tech. Inc. v. KDH Elec. Sys. Inc.*, 697 F. Supp. 2d 146, 161 (D. Me. 2010)). In other words, a contract may contain an implicit, imperfectly expressed promise which underlies the explicit terms. *Id.* A court cannot, however, infer some wholly new obligation into the contract. *Id.* Some courts have found that language in student codes, catalogs, and handbooks is not contractually binding if it is "aspirational in nature." *See, e.g.*, *Soueidan v. St. Louis Univ.*, 926 F.3d

1029, 1035 (8th Cir. 2019) (applying Missouri law); *Gillis v. Principia Corp.*, 832 F.3d 865, 873 (8th Cir. 2016) (same). Indeed, such courts require "an identifiable contractual promise" that the educational institution failed to honor. *See, e.g.*, *Gillis*, 832 F.3d at 871–72 (citation omitted). Ambiguities in contracts between educational institutions and students have, however, been construed in favor of students as the non-drafting party with little bargaining power. *Corso*, 731 F.2d at 533; *see also Peak v. Adams*, 799 N.W.2d 535, 548 (Iowa 2011) ("We generally construe ambiguous boilerplate language against the drafter.").

Some courts considering near-identical cases have dismissed the plaintiff students' breach of contract claims due to the lack of an identifiable "promise to provide in-person instruction and in-person services." *Gociman*, 2021 WL 243573, at *5; *see also*, *e.g.*, *Abuelhawa v. Santa Clara Univ.*, No. 20-CV-04045-LHK, 2021 WL 1176689, at *6 (N.D. Cal. Mar. 29, 2021); *Shaffer v. George Washington Univ.*, No. 20-1145 (RJL), 2021 WL 1124607, at *3 (D.D.C. Mar. 24, 2021); *Zagoria v. N.Y. Univ.*, No. 20 Civ. 3610 (GBD) (SLC), 2021 WL 1026511, at *3–5 (S.D.N.Y. Mar. 17, 2021); *Lindner*, 2020 WL 7350212, at *7; *Chong v. Ne. Univ.*, 494 F. Supp. 3d 24, 29–30 (D. Mass. 2020). Conversely, other courts have found at least an implicit promise of in-person education in the contractual language at issue. *See Saroya*, 503 F. Supp. 3d at 997 (denying the motion to dismiss the plaintiff's breach of contract claim because the "course catalogues include information about the 'days and times' and 'the location' in which the courses would be held"); *see also Bergeron v. Rochester Inst. of Tech.*, No. 20-CV-6283 (CJS), 2020 WL 7486682, at *8 (W.D.N.Y. Dec. 18, 2020) (finding the plaintiff's allegations of promises sufficient); *Ford*, 2020 WL 7389155, at *5 (same).

Plaintiff does not allege that the Academic Catalog or any other relevant document contained an explicit promise of in-person, on-campus instruction. Between her petition and brief in resistance, however, plaintiff identifies the following portions of the

12

Academic Catalog as implicitly promising an in-person, on-campus education:

- The course description for "MU 281 Field Experience in Secondary Choral/Instrumental Music, Grade 5–12" ("MU 281") for the Spring 2020 Semester, a course plaintiff was enrolled in and paid for, states that the course entails "fifteen-hour field experience in a 5–12 choral, band, orchestra setting in public/parochial schools."

- "Wartburg . . . is a vibrant community of living, learning, and service, and you will have ample opportunities to contribute to the growth and integrity of this community through co-curricular activities, life in the residence halls, student organizations, intercollegiate and intramural athletics, and your classes."

- "An intentional focus on the integrative programs of leadership, multicultural and diversely [sic] education, undergraduate research, and campus-community service learning adds value to a Wartburg education. The college encourages students to integrate their classroom learning with opportunities to enhance their leadership skills, immerse themselves in global or domestic settings, practice the research process, or engage in community service projects."

- "One of Wartburg's strengths is providing opportunities for students to 'live their learning.' Community-based experiences are incorporated into many classes, especially those offered during May Term. Through internships, field experiences, student teaching, and service-learning, students connect their academic studies to practical situations, develop new skills, and discover how they can make an impact on the world as professionals and citizens."

- "Residential life is an important part of the total educational program at Wartburg[.] . . . Living on campus enhances classroom learning by providing an opportunity for students to learn more about themselves and others."

- "Wartburg's 118-acre campus provides a variety of classroom environments, living accommodations, and recreational opportunities for students."

(Docs. 2, at 5; 17, at 12–13). As for marketing materials, plaintiff cites a page from defendant's webpage titled "LIFE AT WARTBURG" which touted "on-campus living, dining halls[,] and [a] myriad of activities to nurture your body and soul[.]" (Docs. 2, at 7; 17, at 13). Plaintiff also cites another page which described a "living-learning

13

environment" at Wartburg, encouraged potential students to visit campus, and listed a handful of campus amenities. (Docs. 2, at 7; 17, at 13).

Courts disagree on whether advertising or promotional materials constitute part of the contract between educational institutions and students. *Compare Galligan v. Adtalem Glob. Educ. Inc.*, No. 17 C 6310, 2019 U.S. Dist. LEXIS 17218, at *17 (N.D. Ill. Feb. 4, 2019), *with Durbeck*, 2021 WL 2582621, at *8. The Iowa Supreme Court has, in the employment context, allowed the jury to determine which documents constitute the contract. *Cannon v. Nat'l By-Prods., Inc.*, 422 N.W.2d 638, 640 (Iowa 1988). Following that precedent, the Eighth Circuit Court of Appeals affirmed the Southern District of Iowa's decision to submit this question to the jury in a case involving a defendant university and a plaintiff student. *Warren*, 886 F.2d at 202. The Court finds that considering the marketing materials here is proper because "this is not a typical contract situation where there is an express document with delineated terms that a plaintiff can reference. It is more nebulous." *Salerno*, 488 F. Supp. 3d at 1218. Indeed, in this nebulous context when multiple related documents may constitute the contract between the parties, documents such as marketing materials may at the very least "help define the scope of an implied contract." *Botts*, 2021 WL 1561520, at *13 (quoting *Doe v. Emory Univ.*, No. 1:20-CV-2002-TWT, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021)).

That said, even considering the marketing materials in conjunction with the Academic Catalog, it is not plausible that defendant contractually promised to provide in-person classroom instruction. As discussed, there is no explicit term to that effect. The Court also finds that the documents at issue cannot plausibly be read to contain an implicit term to that effect either. The course description cited by plaintiff concerns in-person field experience in a public or parochial school, not in-person classroom instruction. Plaintiff's remaining citations to the Academic Catalog contain broad, aspirational statements on this issue, none of which plausibly suggest that a promise of in-person

classroom instruction underlies the contract between the parties. *See* (Doc. 17, at 12–13) ("[Y]ou will have ample opportunities to contribute to the growth and integrity of this community through . . . your classes.") ("[C]ampus-community service learning adds value to a Wartburg education.") ("[Wartburg] provide[s] opportunities for students to 'live their learning.'") ("Living on campus enhances classroom learning[.]") ("Wartburg's . . . campus provides a variety of classroom environments[.]"). The same is true of the statements in the marketing materials. *See* (*Id.*, at 13) (describing a "living-learning environment"). Although some of these statements mention physical classrooms or discuss classroom learning generally, none of them even vaguely suggest that students were promised in-person instruction. To find otherwise would go beyond identifying an implicit but essential corollary underlying the contract and instead impose a new obligation on defendant. *See Alta Vista Props., LLC*, 855 N.W.2d at 729; *see also Jackson*, 778 F. Supp. at 1493 ("The financial aid agreements make no mention of . . . a right [to play basketball].") (citing *Hysaw v. Washburn Univ.*, 690 F. Supp. 940, 946–47 (D. Kan. 1987) ("[T]he written scholarship contracts they signed make no indication of such promises [to play football]. . . . Plaintiffs provide no other evidence, other than 'understandings' and 'expectations,' that they were promised a position on the 1986 team."). Although plaintiff may have expected that her classes would be conducted in person, the contract documents do not plausibly entitle her and other students to that.

The contract documents do, however, plausibly contain other promises at this stage. First, it is plausible that the Academic Catalog at least implicitly promises in-person "field experiences." For example, MU 281 is described as a "fifteen-hour field experience in a 5–12 choral, band, orchestra setting in public/parochial schools." The Academic Catalog goes on to state that defendant "provid[es] opportunities for students to 'live their learning'" by incorporating "[c]ommunity-based experiences" such as "internships, field experiences, student teaching, and service-learning" into "many

15

classes." These statements plausibly entitle students enrolled in MU 281 or similar classes to in-person field experience in the community.

Second, it is plausible that the Academic Catalog and marketing materials at least implicitly promise that students will have the opportunity to live in the residence halls. These documents regularly reference life at Wartburg, living in the residence halls, and living on campus, describing residential life as "an important part of the total educational program at Wartburg[.]" These statements plausibly go beyond merely mentioning the existence of the residence halls or discussing life at Wartburg in an aspirational sense. *See* (Doc. 17, at 12–13). ("[Y]ou will have ample opportunities to contribute to . . . this community through . . . life in the residence halls[.]"); ("Wartburg's 118-acre campus provides a variety of . . . living accommodations."). To the contrary, alone or in combination, they plausibly promise students the opportunity to live on-campus. Indeed, the Academic Catalog sets forth charges and fees specific to living in the residence halls.[1]

Last, the same is also plausibly true of access to other on-campus facilities such as dining halls. For example, the marketing materials state that defendant's on-campus "dining halls" are "within reach," and that defendant's "[f]our dining centers on campus" are part of what makes enrolling at Wartburg "worth it." (Doc. 2, at 7). The Academic Catalog again sets forth charges and fees specific to a board plan, i.e. a meal plan related to on-campus dining.[2]

In sum, the Court finds that plaintiff has not plausibly alleged that she and other students were entitled to in-person classroom instruction for every class, but has plausibly alleged that such students were entitled in-person field experience if enrolled in an applicable course, the opportunity to live in the residence halls, and the opportunity to access other on-campus facilities such as dining halls. The Court must, however,

---

[1] http://catalog.wartburg.edu/content.php?catoid=10&navoid=564.
[2] http://catalog.wartburg.edu/content.php?catoid=10&navoid=564.

consider these allegations in light of defendant's reservation of rights discussed below.

### 3.   Right to Modify Courses and Programs

Defendant further argues that plaintiff's breach of contract claim fails because defendant explicitly reserved its right to modify its courses and programs in the Academic Catalog.  (Doc. 11-1, at 14).  Defendant notes that other courts have dismissed nearly identical breach of contract claims on this ground.  *See, e.g.*, *Burt v. Bd. of Trs. of the Univ. of R.I.*, No. 20-465-JJM-LDA, 2021 WL 825398, at *5 (D.R.I. Mar. 4, 2021) (noting that the defendant university reserved the right to change class location and meeting times).

Plaintiff argues that defendant's reservation of rights does not cover all the activities and facilities for which plaintiff paid tuition and fees, that it only allows for minor modifications, that any modification was invalid due to a lack of consideration, and that it cannot wholly bar any contract-based relief.  (Doc. 17, at 14–17) (citing *McCarthy*, 2021 WL 268242, at *5 (holding that the defendant educational institution's general reservation of rights may not reach far enough to allow modification from in-person to remote learning)).

The reservation of rights in the Academic Catalog, in relevant part, states: "Wartburg . . . reserves the right, without notice, . . . to modify the courses of instruction or programs of study; to change tuition and other fees; . . . or to alter any portion of this catalog and policies or procedures referred to herein."[3]  The Court already found above that the Academic Catalog, even in conjunction with the marketing materials, cannot plausibly be read to promise students in-person instruction in all of their courses.  The Court did find, however, that it is plausible that students were promised in-person education if enrolled in a field experience course, promised the opportunity to live in the

---

[3] http://catalog.wartburg.edu/index.php?catoid=10.

residence halls, and promised access to certain on-campus facilities. Thus, the question here is whether defendant's general reservation of rights is broad enough to negate these plausible promises.

The Court finds, at least at this stage, that defendant's general reservation of rights does not defeat plaintiff's breach of contract claim. The reservation clause does not specifically apply to living in the residence halls and accessing campus facilities. At best these two issues are encompassed within defendant's right to "alter any portion" of the Academic Catalog. But the Court cannot find that this broad disclaimer categorically allows defendant to retain fees collected for room and board while also removing any entitlement students have to access the residence halls, dining halls, and other campus facilities. To find as such would essentially conclude that students were not entitled to anything under the Academic Catalog because any portion of it could be fundamentally changed to any extent at any time.

The reservation clause does specifically establish defendant's right to "modify the courses of instruction or programs of study." This right to modify can plausibly be read to concern only "small changes." *See Modify*, Black's Law Dictionary (11th ed. 2019). Such small changes might concern, for example, changing the hours a class meets, the location where a class meets, or the number of students allowed in a class. But classes such as MU 281 fundamentally concern field experience in a school setting. Thus, changing that type of class from an in-person to remote experience could plausibly go beyond a mere modification and instead constitute a fundamental alteration of the course which is not encompassed by the reservation clause.[4]

---

[4] Nor is this a situation, for example, where an educational institution offered a course to students but later cancelled it due to low enrollment or some other issue. That more typical type of change might be encompassed by an educational institution's right to modify its course offerings or alter its catalog generally. Here, though, defendant is still offering the course and collecting payments related to it, but plausibly altering it in a fundamental way such that its reservations of

For these reasons, the Court finds that defendant's reservation of rights in the Academic Catalog does not, at least at this stage, bar plaintiff's breach of contract claim as that claim relates to field experience courses, living in the residence halls, or accessing certain on-campus facilities.

### B.    Unjust Enrichment

In her alternative unjust enrichment claim, plaintiff asserts that she and others paid tuition and fees to defendant that were "intended to cover in-person educational services" for the Spring 2020 Semester at Wartburg, that defendant failed to provide such in-person educational services, and that defendant has inequitably retained the entirety of the tuition and fees paid. (Doc. 2, at 15). Thus, plaintiff concludes that "[d]efendant should be required to disgorge all profits resulting from such overpayments and establish[ ] a constructive trust from which [p]laintiff and Class Members may seek restitution." (*Id.*, at 16).

"Unjust enrichment is an equitable doctrine . . . wherein a plaintiff 'must prove the defendant received a benefit that in equity belongs to the plaintiff.'" *Iowa Network Servs., Inc. v. Qwest Corp.*, 363 F.3d 683, 694 (8th Cir. 2004) (citing *Slade v. M.L.E. Inv. Co.*, 566 N.W.2d 503, 506 (Iowa 1997)). To prevail on a claim of unjust enrichment under Iowa law, a plaintiff must show "(1) [the] defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust to allow the defendant to retain the benefit under the circumstances." *State ex rel. Palmer v. Unisys Corp.*, 637 N.W.2d 142, 154–55 (Iowa 2001).

First, defendant argues that plaintiff has not sufficiently alleged that defendant "was unjustly enriched or enjoyed any undeserved benefit as a result of its transition to remote learning." (Doc. 11-1, at 18). The Court finds plaintiff's petition sufficient on

rights may not apply.

this point. Plaintiff alleges that she and other students paid tuition and fees for in-person, on-campus educational services and that defendant failed to render the services paid for but still retained the tuition and fees paid. (Doc. 2, at 15–16). These specific facts and allegations are sufficient to raise plaintiff's unjust enrichment claim above a speculative level at this stage.

Second, defendant argues that plaintiff's breach of contract claim precludes her unjust enrichment claim because the two cannot coexist with respect to the same subject matter. (Doc. 11-1, at 16–18) (citing *Kunde v. Estate of Bowman*, 920 N.W.2d 803, 808 (Iowa 2018)). Plaintiff responded that dismissal of her unjust enrichment claim is only appropriate if defendant agrees that a contract existed between the parties. (Doc. 17, at 3). In its reply, defendant clarifies that it does not dispute the existence of a contract here. (Doc. 27, at 6–7). Because the existence of a contract is no longer in dispute, plaintiff cannot also maintain her unjust enrichment claim on the same subject matter. *See Barkhordar v. President & Fellows of Harvard Coll.*, No. 1:20-cv-10968-IT, 2021 WL 2535512, at *8 (D. Mass. June 21, 2021) (dismissing the plaintiff's unjust enrichment claim where the parties agreed their relationship was contractual in nature); *Durbeck*, 2021 WL 2582621, at *12 (allowing an alternative unjust enrichment claim because the defendant educational institution denied the existence of a contract). Thus, dismissal of plaintiff's unjust enrichment claim is proper.

## V. *LEAVE TO AMEND*

Plaintiff requests leave to amend her petition if defendant's motion to dismiss is granted to any extent. (Doc. 17, at 19 n.10). Defendant asserts that amendment would be futile. (Doc. 27, at 9). Because plaintiff agreed to dismissal of her unjust enrichment claim if the existence of a contract is established (Doc. 17, at 3), the Court need not consider whether amendment is appropriate as to that claim. The Court will, however, consider whether amendment is appropriate as to plaintiff's breach of contract claim to

the extent it is based on an entitlement to in-person educational services for every class.

Federal Rule of Civil Procedure 15(a)(2) provides that when a party requests leave of court to amend a pleading outside the 21-day deadline, amendment is only proper with the opposing party's written consent or the court's permission. In such cases, "[t]he court should freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2). Although there is no absolute right to amend a pleading, the Eighth Circuit Court of Appeals takes a "liberal allowance" of amendments. *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 394 (8th Cir. 2016) (citation omitted). The absence of undue delay, bad faith, dilatory motive, and prejudice to the opposing party should weigh in favor of granting leave to amend. *Id.* at 395. Leave to amend should also be denied, however, if the amendment would be futile. *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002). "A proposed amendment is futile if it could not survive a [Federal] Rule [of Civil Procedure] 12 motion to dismiss." *Cmty. Voice Line, LLC v. Great Lakes Commc'n Corp.*, 295 F.R.D. 313, 321 (N.D. Iowa 2013) (citations omitted).

Here, the Court finds that leave to amend would be futile. As discussed above, there is no contractual language which can plausibly be read to constitute an entitlement to in-person educational services in every class. Plaintiff has failed to identify any such statement in her petition or brief here. The Court's own review of the Academic Catalog and marketing materials provided revealed no such statement. Thus, although the Court recognizes the liberal policy of allowing amendments, it sees no practical reason to grant leave to amend on this issue. Thus, plaintiff's alternative request for leave to amend is **denied**.

## VI. CONCLUSION

For these reasons, the Court **grants in part and denies in part** defendant's motion to dismiss. (Doc. 11). The Court **grants** defendant's motion as to plaintiff's breach of contract claim as it relates to rendering in-person educational services for every class and

as to plaintiff's unjust enrichment claim.  The Court **denies** defendant's motion as to plaintiff's breach of contract claim as it relates to in-person field experience courses, living in the residence halls, and accessing certain on-campus facilities.  Plaintiff's alternative request for leave to amend is **denied**.

      **IT IS SO ORDERED** this 30th day of July, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa